RAYMOND MAUDSLEY, BY NEXT FRIEND, WILLIAM G. MAUDSLEY, AND WILLIAM G. MAUDSLEY IN HIS OWN RIGHT, RESPONDENTS, v. RICHARDSON & BOYNTON COMPANY, A CORPORATION, APPELLANT.

Submitted March 25, 1925—Decided May 18, 1925.

In passing upon a motion to nonsuit, the court cannot weigh the evidence, but must take as true all testimony which supports the view of the party against whom the motion is made, and must give him the benefit of all legitimate inferences which are

to be drawn therefrom in his favor; and a refusal to nonsuit for failure of proofs will not justify a reversal if the defect be supplied by evidence thereafter taken during the progress of the cause.

On appeal from the Essex County Circuit Court.

For the respondents, *John A. Matthews.*

For the appellant, *Edward R. McGlynn.*

PER CURIAM.

Raymond Maudsley, the infant plaintiff, by his next friend sued for damages resulting from being run down by an automobile in the town of Irvington, when he was six years and ten months old, and had a verdict and judgment. His father, who was his next friend, also had a verdict and judgment on a count for the recovery of expenditures for medicines for, and medical treatment of, his infant son. The only ground of appeal argued and submitted in this court is as to the refusal of the trial judge to grant a nonsuit upon the evidence adduced by the plaintiffs.

In passing upon a motion to nonsuit the court cannot weigh the evidence, but must take as true all testimony which supports the view of the party against whom the motion is made, and must give him the benefit of all legitimate inferences which are to be drawn therefrom in his favor. *Mulrooney* v. *O'Keefe,* 98 *N. J. L.* 853.

Now, Raymond, the infant plaintiff, testified that on a night in October, 1922, he was going from his home to Irving Centre at half-past seven o'clock to take an umbrella to his mother; he had on a raincoat and rubbers and had an umbrella over his shoulder. When he came to the corner (Union and Lyons avenues) he looked up and down the street and there was no automobile coming, so he started to cross, when an automobile hit him and knocked him senseless.

Mr. Vollmer, a witness on behalf of the plaintiff, testified that he was in a store near the scene of the accident, and saw the boy brought in there and laid on a pool table. He (wit-

ness) immediately went out and picked up a rubber ten feet from the corner of Union and Lyons avenues. He found the boy's storm cap twenty-five feet from the corner in the same direction; he saw the car in the same direction, about eighty feet from the corner, and picked the umbrella off the mud-guard. It had been raining hard. The houses in the neighborhood of the corner averaged less than a hundred feet apart.

This evidence was sufficient to justify a finding of negligence on the part of the defendant, but, if it were not, nevertheless, a refusal to nonsuit for failure of proofs will not justify a reversal, if the defect be supplied by evidence thereafter taken during the progress of the cause. *Wilson* v. *Brauer,* 97 *N. J. L.* 482. There was no motion to direct a verdict, and the defense examined two witnesses, one the chauffeur and the other a physician, as to the extent of the boy's injuries.

Mr. Kraft, the driver of the car, testified that he had been employed by the defendant for thirty-six years, driving an automobile eleven years; that he was driving defendant's car; when he reached the intersection of Lyons and Union avenues at half-past six on a very nasty, rainy, dark night, there was no street light there except a small electric bulb on a telegraph pole; that he stopped on the corner; that he did not see anyone crossing over; when he proceeded about fifteen feet he felt a thud on the car as if something touched it, and he immediately stopped, within the length of the car, about ten feet six inches; that he looked toward the front and observed an umbrella on the mudguard, and to the rear he saw a boy lying three feet back of his rear wheel; the car had a front bumper and the umbrella was on the right-hand side of it; when he stopped at Union avenue the car was across the centre of the road, it had regular lights. He came down Lyons avenue ten miles an hour; when he came to Union avenue he stopped and did not see anything, looking through the wind-shield. In the course of his cross-examination Kraft, when asked what was his speed when he started to cross the street, said it was hard to judge a ma-

chine starting—not fast; but, again, "*Q.* You were only going ten miles an hour when the accident happened? *A.* Yes, sir." From this testimony the jury could infer that if he had looked he would have seen the boy, or, if he did not look, he was, in either case, negligent in going forward at such speed, whatever it was, as caused the accident. Besides, it appearing that the houses were, on the average, less than one hundred feet apart, the boy was entitled to the right of way. *Pamph. L.* 1915, *ch.* 156, *p.* 297, *part IV, §* 12.

In the circumstances disclosed by the evidence a case was presented which justified the verdict, and the judgments entered thereon will therefore be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, GARDNER, VAN BUSKIRK, CLARK, McGLENNON, KAYS, JJ. 16.

*For reversal*—None.